Please be seated. Your Honor, Mr. Kirk, on their behalf, I'm going to call 2180996, Chief of the State of Illinois v. Christopher Castillo, on behalf of Appalachia, Mr. Mark E. Almanza, on behalf of the State, Lady M. Laquilla. Mr. Almanza, you may proceed. Good morning. I am Mark Almanza on behalf of Christopher Castillo. Good morning, sir. Five minutes for rebuttal, and may it please the Court. Your Honor, prior to this case, Christopher Castillo had no criminal history and no court involvement. And we are here today because Mr. Castillo has not been to trial, and that is what essentially he is requesting. On March 8th, he did plead guilty, and immediately afterwards sought new counsel and filed a motion to withdraw the plea of guilty prior to the following court date and prior to any sentencing. In his motion to withdraw the plea of guilty, he did indicate that he was not guilty, maintaining his innocence, and still to this day maintains his innocence, and is seeking to have a trial on the issue of this case. But he spoke to the judge during – there was a 402 conference, correct? Yes, there was. And he consented to the 402 conference. That is correct. And although I don't – there probably was something that came thereafter, after the 402 conference, because the same judge stayed on the case. Correct. And then it came time for the plea, and he actually responded to the court. After the state put in a statement of facts, basically, and he said yes. In part, the trial court asked the defendant whether he had discussed the case with Lyon and was satisfied with his representation, and he said yes. What – why did he say yes? At the time he was going along with the plea, he hadn't had very much time to discuss what was actually happening on that court date up until he was stepping up at that time. Once he made sense of it and realized that that wasn't what he wanted, he filed immediately the motion to withdraw the plea of guilty. There was no delay in time that occurred between, essentially. Well, there was. He didn't file it that day, but he – There was a delay in time, but in between, for the court purposes, there wasn't a delay in any court hearing, no public proceeding happened, nothing happened in court between the plea of guilty and then the filing of the motion to withdraw. That was the immediate next item that was filed. Well, it's something about he didn't have time to think about it, I think, is generally something that was said, or I'm paraphrasing. Right. But he didn't plead guilty on the day of the 402 conference, did he? They came back later. Correct. And so there was one or two weeks, so he came back. Now when the judge says, is this what you agreed to? Do you still want to plead guilty? He said yes. Who told him? And I don't believe it was the judge, for the record. Who told him, well, don't worry, you'll have time to think about this after you plead guilty? I don't think that that was our argument, that he was told that he would have time to think about it and plead guilty or withdraw that. It's that. He didn't want to plead guilty. Even though he was admonished and said that that's what he wanted to do, that isn't what he wanted to do. He attempted to correct that. Well, withdrawal of a plea is appropriate when either there's a misapprehension of the facts or the law or doubt of the defendant's guilt, really amounting, any of which could amount to a manifest injustice. What we've heard here is either he's changed his mind or he felt rushed. How do one of those two factors constitute a manifest injustice in light of what Justice Hutchinson pointed out that the record reveals with regard to the answers on to the judge at the time he pled guilty, et cetera? Where was there a manifest injustice? Well, the injustice is that he is requesting a trial on the merits. No, he didn't do that then. No, he did not do that then. We're talking about withdrawing the basis on which a trial judge can withdraw a plea, and then we need to look at that decision. But the standard is what I had just talked about. So how do what you have talked about, how does what you have talked about today constitute a manifest injustice? Right. So the his misapprehension of the facts led to the plea of guilty, which is where we're at, right? He wanted to withdraw that plea to have a trial. So it's more of an issue that there is doubt about his guilt. He's claiming his innocence. He's requested a trial. And so the lawsuit does favor a hearing on the merits, and that is what we're requesting, to have that be heard, because he is claiming innocence. He's claiming that he's not guilty of the charges and does not wish to be guilty and wishes to have a trial on the merits. What's his out date? I don't have that exact date. It should be two years from that date. How many years? Two years? It's a four-year sentence on paper day credit. So that's two years. So that would be. And he was sentenced, I think, in February or thereabouts, or April of 18? Correct. So this is a year, so he'll be out in a year. Correct. And if we vacate the plea, it will probably take at least a year for him either to plead over or to be tried. And if he's going to be tried, what is he looking at as far as a vacation of the plea and the felonies that he's looking at? Right. We're aware of the charges that are facing. He's looking to have a trial on the merits and to be found not guilty at the conclusion of the trial. Well, he was charged with aggravated criminal sexual abuse, which would be a plea plea guilty to that. He was charged with aggravated criminal sexual abuse, another iteration, and predatory criminal sexual assault. So all three of those would be reinstated. Predatory criminal sexual assault of a child, I think, would be the most serious. Right. There are some serious charges. There's a class act charge. So his trial, if he got a trial, would be on all three of those charges, not just the one he went guilty to. That is correct. And he's looking at a significant sentence beyond what he has served. That is correct. The minimum on the class acts would be greater than what he had to attend to. That is correct. That doesn't change the analysis of him requesting a trial on the merits and his claim of innocence and being not guilty. Well, you said you didn't know what charges. The charges would be the ones that were dismissed. Right. So those are the charges, and one of them at that minimum is rather serious. Correct. Did he ever argue that he was not aware of the implications relating to registration for the rest of his life? No. That comes along with the plea of guilty, but we're not arguing that there's confusion about that. It's that he's choosing to have or wanting to have a trial on the merits, and we are confident and hopeful that after a trial he would be not guilty, which would mean no registration would be required or any sentencing for a greater length of time. And the rationale presented to the trial court was that he was not guilty? Yes. In the initial motion that was filed to withdraw, we indicated that he was hurried and rushed, but also that he's maintaining a claim of not guilty and wants to have his merits heard at the trial. I'm not sure that he confessed, but I think he made admissions that go a long way to suggest that what he was doing was impure and that upon retrial, if there's corroboration, his admission would constitute sufficient evidence to prove him guilty beyond a reasonable doubt. So I'm having a problem with the idea that he's either rational or he's truthful, or both to the extent that he is now claiming that it's a manifest injustice and under the circumstances he shouldn't be allowed to withdraw his claim. Well, I don't think that any statements or the evidence that would be introduced at trial is at issue before this Court. While that might be the case, I would disagree with the characterization of the evidence being sufficient to... And he touched her vagina? Did I misunderstand? I believe that there was no admission that he touched underneath the clothes or did any penetration. Didn't he tell the police that? Didn't he tell the police officer that and then didn't the police obtain text messages in which he apologized for his actions? That's not part of the record? That is part of the record. The text messages don't indicate that there was any touching that was done. I'm sorry, the what? They don't indicate that there was any touching. It's just a blanket apology to family members. The text messages. Correct. And the statements that were made were after some lengthy police interrogation where he initially denied it and then later made some statements that could be characterized as admissions, but we do not believe that they are sufficient to prove this guilty beyond a reasonable doubt. But that would be an issue for trial regardless. Right now what we're asking for is that opportunity. Is the standard of review abuse of discretion? Yes. And the reason for my inquiry was because if I were the trial judge and I knew of these admissions or these statements or these text messages plus the allegations that were made and that when reported, were reported almost immediately after the alleged event, then I as a trial court judge in adjudicating or deliberating on whether or not I thought that a manifest injustice had been done, I would have a hard time coming to the conclusion that as an appellate judge, what the trial court did was an abuse of discretion. How do you explain? You keep talking about these are things that are supposed to come up at trial. These are things that are of record that the trial court decide, I shouldn't say decide, considers in its grant or denial of relief. How can you say that you just disregard it? We're not disregarding it, Your Honor. What we're asking for is for him to have the opportunity to actually have that evidence be examined at trial and have a cross-examination of the witnesses and documents that are intended to be introduced. He hasn't had that opportunity, and so that's the inherent intent. But he could have requested a trial, but he said he was aware of what the judge was saying, he was aware of what he was giving up, and he still wanted to plead guilty. So how do we reconcile he wants a trial when he said, no, I understand what I'm doing, I don't want a trial? Well, that is exactly, I believe, why we're here. He initially indicated that he wanted a waiver, he did sign the waiver of rights, but immediately afterwards, once he had an opportunity to reflect and think about what had just occurred, is when he realized that that's not what he wanted to do. He had three weeks between the time the court had a 402 conference and the time of the actual plea. How much time is he asking for? It was not about asking time to review and consider and then make the same decision. It was having time to review it. He does not want to plead guilty. He wanted to have a trial. Did it change from the 402? What? Did the plea recommendation change from the time of the 402 until the actual plea was entered? As far as I understand it, it was the same. Nothing happened. The change between the judge's recommendation, I don't know, I don't believe that there was any communication between Attorney Lyon and Christopher Castillo immediately after the 402 conference. There was a brief, this is the next court date, come back the next court date, and then on that March 8th date is when it was explained, so he quickly pled guilty on that day without him expecting to actually come into court to plead guilty on that day. The court came out after the 402 and put something on the record, didn't it? There was nothing on the record. It appears that it ended after the 402 conference and it was very likely continued off the record for the following court date. Okay. But you're not alleging that there was an improper 402 conference? No. No. The argument that we are presenting, we submit to the court, is that he should be entitled to withdraw his guilty plea when it was filed and requested so close in time to the plea of guilty, prior to any sentencing, prior to him having done any time in the penitentiary, prior to him having regretted the time he was spending in the penitentiary. In my view, there were very few cases, I couldn't find any, that had this fact pattern that had been on appeal. Most every other situation was after sentencing. This one was filed prior to sentencing, immediately after he had answered his plea of guilty. Could you refresh my recollection regarding what I'm going to read to you? Castillo was denied a Sixth Amendment right to effective assistance of counsel when his attorney failed to adequately inform Christopher so that Christopher could make an informed, voluntary, and knowing waiver of his right to trial. So, relative to that, what did his attorney fail to inform him about? It was a failure to inform him about what was, well, first of all, what was going on with the 402 Conference was. Mr. Castillo is a high school graduate. Excuse me. Would you keep your voice up? It's a very big room, and I know we have a microphone, but we also have people in the back who need to hear. Absolutely. I apologize for that. I will keep my voice up. Mr. Castillo is a high school graduate. He did not understand the full consequences of what a 402 Conference were. I don't think we can expect him without it being explained to him by his lawyer. No, I didn't ask you that, counsel. You're drifting off. I asked you, not did he understand the consequences, but that isn't what you said. What you said was that counsel failed to inform him so he could make a voluntary decision relative to his plea. So you started answering, to some aspect, what the attorney did or didn't do that was defective, but I'd like to have you elaborate and at least list seriatim what it was that he failed to do. Well, I think one of the basic obligations of an attorney is to explain to their client what is happening and especially to explain what is going on with the 402 Conference, which wasn't done in this case. It wasn't explained to him in any fashion until the March 8th court date on which he pled guilty. If he didn't have those three weeks to consider what was going to happen or the possibility of pleading guilty, that wasn't what he understood it to be. He understood the March 8th court date to be a continuance for him to come to court. He still expected that this would be heading towards trial. He had a consultation with his attorney that day prior to it being called, and that's when the decision was made for him to plead guilty. All of that comes from that case. Adequate representation would have explained to Mr. Castile what would happen if given him the opportunity to actually make that decision as an informed decision, which he would have refused that offer had he been adequately informed by his counsel as to what was happening, what the consequences were going to be, and that he would have pleaded guilty. In this case, I believe that the ends of justice would be served by allowing Christopher Castile to have this matter heard on its merits before trial, and that is what we are requesting. Thank you. You'll have an opportunity to make your vote. Thank you. Oh, I'm sorry. You may proceed, Mr. White. Good morning, Honorable Justices, Counsel, and may it please the Court. My name is Amy Wotroba. I'm from the DuPage County State's Attorney's Office, and I represent the people of the state of Illinois, in this case, as appellee. To put it simply, Your Honors, buyer's remorse is not a valid basis to request a withdrawal of a guilty plea. In addition to the dates of transcripts that Your Honors have already referenced, specifically those the date of the 402 Conference as well as the date that the plea was taken, on March 8th of 2018, I would like to additionally point out the fact that on every single court date, after public defender Mark Lyon was appointed, he was not the initial attorney on this case. I should back up first. For the first four and a half months, defendant was represented initially by the public defender, then private counsel, then again the public defender. That constituted four and a half months and four court dates. After Mr. Lyon was appointed, he had represented defendant for approximately seven months. Between his appointment and the ultimate date of the plea, there were eight court appearances. Two of those are missing from the record. We don't have transcripts, but on the six that are in the record, negotiations, plea offers are mentioned on every single one. So insofar as the defense argument suggests that defendant always wanted an eye toward trial, it's very clear that that was never, at least in the proceedings that were had up to the plea, ever the focus. Of course, discovery was tendered and those things were done, but at every single court appearance, and defendant was present on every single one of those court dates, there was something spread of record of the State making an offer, the State modifying an offer, the defense considering the offer, a mitigation statement being put together that further supports the position. Does the record reflect that either the judge or his attorney, after the 402 conference, put on the record what transpired at the 402 conference? Your Honor, there's no transcript of proceedings. There is, in the common law record, there is a court order in the common law record, and then also what I would refer to as the electronic fact sheet also does indicate, obviously, that a date was taken, and I believe it's indicated for hearing versus status. So in my experience, again, any inadequacies in the record are obviously construed against the appellant. However, it is in my experience, sometimes if there's a change in court reporter between the morning proceedings and the afternoon proceedings, perhaps that was omitted from the record. I will say that the judge also did clarify, and I believe it was the motion to reconsider, the initial motion to vacate the plea, did in fact clarify that on February 23rd, the date of the 402, that specifically the parties agreed that the plea would not be taken that day, but rather the case would be continued to the 8th. So to me, that further suggests that, yes, there were additional conversations had. Whether they were transcribed, I cannot say based on this record. With respect to the ineffective assistance of counsel claim, I believe we primarily rest upon our brief, other than just to respond that the claims alleged in the motion were not alleged in the initial motion. They were first brought up in the motion to reconsider, and they are divorce the record. They're more amenable to review in a post-conviction proceeding. If Your Honors have no other questions, we would rest on our brief and respectfully request that you affirm the judgment. What is the status, if you know, of the parties beyond, obviously, Mr. Castillo, of witnesses, police officers, things of that nature? As far as their availability for trial? Your Honor, I do not know. I did not review the trial record of this case. I speak to the assistant who initially handled it. The plea agreement apparently was that it wasn't going to be agreed that it was going to be a four-year minimum sentence. It was, according to your brief, that it was a four-year floor minimum sentence. So it could have been more than four years. Correct, and the State did request six. So, essentially, the defendant got the smallest, the littlest, the most minuscule sentence that he could possibly have gotten under the bargain or under the plea agreement with the Senator. That is correct, Your Honor. And, Your Honors, we're correct. If this were to be retried, the predatory count is the most serious. It is a class X with a range of 6 to 60. It served at 85%. Obviously, it carries with it the mandatory lifetime registration. All the counts did. The defendant was admonished of that. That is in the record, both by counsel and the judge. It also carries a longer three-year to life of MSR. It doesn't need to add criminal sentences. Any other questions?  Thank you, Your Honors. Thank you. Mr. Almanza, you may proceed. Thank you, Your Honor. If you may, please, report. Very briefly, I will just respond a little bit to the discussions that were being had as far as having a plea agreement. Those do happen. That doesn't indicate that that was a discussion that was had between Mr. Castillo and really anyone else, or that it was his desire to enter into a plea agreement. That's part of what sometimes occurs in trial court practice, where you have discussions about it, but that doesn't mean it was coming at the direction of Mr. Castillo. In fact, his objective is to have this case heard on the merits. And the amount of time that was agreed upon for the sentencing range isn't what we are arguing for or against. It's actually to be able to withdraw the plea of guilt that had been heard on the merits at trial. And then afterwards, with the consequences of the possibility of greater time, that's not affecting our analysis as to what he is trying to achieve and what we believe he's entitled to. If there's no further questions, we will rest and ask this Court to grant our relief and then allow him to withdraw a guilty plea. Thank you. We'll take the case under advisement. We have one more case on the call.